Koscuik, Appellant, vs. Sherf, imp., Respondent.

*February 10—March 9, 1937.*

For the appellant there was a brief by *Clifford & Dilweg* of Green Bay, and oral argument by *Gerald F. Clifford.*

For the respondent there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *Walter T. Bie.*

FRITZ, J.    The plaintiff seeks to recover damages for personal injuries which he sustained, at about 3:30 a. m., on

August 15, 1932, while riding on the front seat of an auto-
mobile, which the defendant Sherf was driving southward on
a concrete highway when it collided with the side of a freight
train, traveling about five miles per hour in a southeasterly
direction across the highway at a 59° angle. The plaintiff
was accompanying Sherf, at his direction, from Green Bay
to Chicago on a business trip for a corporation of which the
latter was the president and general manager, and the plain-
tiff an employee. Both had to wear glasses to see well enough
to safely drive an automobile, but the plaintiff forgot to take
his glasses along. It was a dark night with some mist or fog.
The automobile headlights were lit and in good condition.
A few miles north of the place of the accident, at the junc-
tion of two highways at which Sherf was to make a turn,
neither saw a roadside highway sign until it was noticed by
the plaintiff as they passed it and went over that crossing.
Although their view of the railroad crossing as they ap-
proached for a considerable distance from the north was not
obstructed by any curves or other permanent physical condi-
tion along the highway, neither Sherf nor the plaintiff saw
the train on the crossing until the automobile was about fifty
feet from it. The plaintiff testified, "At the same time I saw
the train fifty feet away, he applied the brakes. Maybe he
saw it before I did. . . . It was not far enough that I could
have warned Sherf and give him time to stop the car because
as I seen, I heard his brakes slam on and the car skidded in
and hit the train." And Sherf testified, "I slammed on the
brakes . . . as fast as I could when I appreciated a train.
I could not tell how far in feet my car was away from the
track at the time." In relation to speed he testified, "I was
driving from forty to forty-five miles an hour. We were
not driving excessively fast because we had plenty of time to
get to Chicago." And the plaintiff testified, "The car was
going between forty and forty-five miles an hour. . . . I did
not think the speed at which he was driving that night was

excessive." However, there was no evidence as to the distance within which the automobile could be brought to a stop in the exercise of ordinary care while driving at that speed.

The jury found Sherf was negligent in failing to keep a proper lookout, and that the plaintiff was injured as a result thereof; but that the plaintiff was not negligent in failing to maintain a proper lookout. On Sherf's motions after verdict he did not contend, and the court did not consider, that those findings were inconsistent, or that it was not within the jury's province to find that the plaintiff was not negligent, although it found Sherf negligent in respect to lookout. The difference in those findings is reasonably attributable to the difference between the greater distance that Sherf could see with the aid of his glasses and the more limited distance that the plaintiff could see without his glasses. Moreover, even if the plaintiff's vision had been as good as Sherf's, it would not necessarily follow that the plaintiff was guilty of contributory negligence, as a matter of law, in failing to observe the train sooner than Sherf did, or to call his attention thereto sooner.

"The duty of a passenger in an automobile or other vehicle about to cross a railroad track is not the same as the duty of the driver of an automobile. While the driver of the automobile is guilty of contributory negligence as a matter of law if he fails to look, a passenger in the automobile is not held to such a strict degree of care, and whether his failure to look amounts to contributory negligence is, generally, a jury question." *Tomberlin v. Chicago, St. P., M. & O. R. Co.* 208 Wis. 30, 32, 238 N. W. 287, 242 N. W. 677, 243 N. W. 208; *Howe v. Corey,* 172 Wis. 537, 179 N. W. 791; *Suschnick v. Underwriters Casualty Co.* 211 Wis. 474, 248 N. W. 477; *Paine v. Chicago & N. W. R. Co.* 208 Wis. 423, 427, 243 N. W. 205; *Kull v. Advance-Rumely Thresher Co.* 209 Wis. 565, 245 N. W. 589.

However, notwithstanding the jury's finding that Sherf was guilty of causal negligence in failing to keep a proper

lookout, the court was of the opinion that "the instant case cannot be distinguished from *Walker v. Kroger Grocery & Baking Co.* 214 Wis. 519, 252 N. W. 721," and therefore granted Sherf's motion for judgment *non obstante veredicto.* The court erred in those respects. There is a material and crucial difference between the extent to which there was impairment of visibility by reason of fog or atmospheric conditions under the facts in *Walker v. Kroger Grocery & Baking Co., supra,* and under the facts in this case. In *Walker v. Kroger Grocery & Baking Co., supra,* the evidence established that the fog was so dense that the driver could see only forty to fifty feet ahead with the aid of his lights. But in this case Sherf's testimony is, "It was very dark. There was a slight mist here and there. Not a dense fog or anything like that;" and the plaintiff testified, "It was a dark night. There was no moon shining. It was sort of foggy and misting like. It was not clear, kind of misty, foggy." The testimony of three members of the train crew was that the visibility was sufficient to enable the engineer and fireman in the engine cab to see the conductor's lantern signals at the rear of the train, eight hundred to one thousand feet away; to see lights over a mile away of automobiles approaching from the north and from the south on the highway; and to enable the conductor, after the accident, to see the side of the train, without the aid of any headlights, at a distance of one hundred feet to the north on the highway. The facts established by that testimony distinguish this case from *Walker v. Kroger Grocery & Baking Co., supra.* As those facts warranted the jury's finding that Sherf's negligence in failing to keep a proper lookout caused the plaintiff's injury, and Sherf, as well as the plaintiff, testified that his speed of forty to forty-five miles an hour was not excessive, and there was no evidence that at that speed the automobile could not have been stopped within the distance at which the train was visible and ought to have been observed

by Sherf in the exercise of ordinary care in time to avoid the collision, the court was not warranted in holding that the collision was caused by excessive speed, and that therefore the plaintiff, by acquiescing therein, had assumed the risk of injury therefrom and could not recover. With credible evidence in the record that the sides of the cars of the train were visible at a distance of one hundred feet without the aid of any headlights, the court could not hold, as a matter of law, that it was negligent or dangerous to drive at forty to forty-five miles per hour, and that the plaintiff had assumed the risk of injury as the result of that negligence or danger and therefore could not recover. The court could arrive at that conclusion, as a matter of law, only if it was conclusively established under the evidence that the speed at which they had been traveling was so great that Sherf could not bring the automobile to a stop within the distance in which he could and ought to have seen the train in the exercise of ordinary care. Therefore the court should, at most, merely have ordered a new trial, in the interests of justice, without costs, to enable the parties to offer proof on that, as well as on all other issues, so that the real controversy could have been fully tried. As that was not done, the judgment will be reversed and the record remitted for that purpose to the trial court in the exercise of the discretion vested in this court. Sec. 251.09, Stats.

Sherf also contends that the relationship which existed between him and the plaintiff was rather that of employer and employee than of host and guest, and that therefore the plaintiff's remedy was solely under the Workmen's Compensation Act. Those contentions are based upon the facts that seventy-five per cent of the capital stock of the corporation for which they were making the trip in question, and by which the plaintiff was employed as a shop superintendent in charge of a crew of its employees, was owned by Sherf; that

he was the president and general manager thereof; and that his mother held the remaining twenty-five per cent of that stock, and was a vice-president of the corporation. Notwithstanding those facts as to the extent of Sherf's ownership of the corporation's capital stock and his control or domination of its affairs, there was no such identity between the corporation and Sherf as to constitute Sherf the employer of the plaintiff or to render the latter an employee of Sherf, as well as of the corporation. The decisions in *Leigh Aitchison, Inc., v. Industrial Comm.* 188 Wis. 218, 205 N. W. 806; *Milwaukee Toy Co. v. Industrial Comm.* 203 Wis. 493, 234 N. W. 748, are not in point. Consequently, as the plaintiff never filed a claim against the corporation for compensation for the injuries which he sustained as the result of Sherf's negligence, he was entitled to maintain this action to recover therefor.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter an order granting a new trial.

MARTIN, J., took no part.