Christopher S. CLARK, a minor by Lawrence R. Nash, his guardian ad litem, and Arthur S. Clark, Plaintiffs-Appellants,

v.

LEISURE VEHICLES, INC., a foreign corporation, Reserve Insurance Company, a foreign insurance company, Defendants-Respondents-Petitioners,

BAY CITY SUPPLY COMPANY, a Wisconsin corporation, General Casualty Company of Wisconsin, a Wisconsin insurance company, Clark Motors, Inc., a Wisconsin corporation, and Iowa National Mutual Insurance Company, a foreign insurance company, Defendants-Respondents.

Supreme Court

*No. 77–881. Argued May 6, 1980.—Decided June 3, 1980.*

(Also reported in 292 N.W.2d 630.)

For the respondents-petitioners there were briefs by *Ward I. Richter* and *Bell, Metzner & Seibold, S. C.,* of Madison, and oral argument by *Mr. Richter.*

For the plaintiffs-appellants there was a brief by *Lawrence R. Nash* and *Chambers, Nash, Pierce & Podvin* of Wisconsin Rapids, and oral argument by *Lawrence R. Nash.*

CONNOR T. HANSEN, J. In October, 1975, Christopher S. Clark and his father, Arthur S. Clark, commenced an action against Leisure Vehicles, Inc.; Bay City Supply Company; Clark Motors, Inc.; and their respective insurers, Reserve Insurance Company, General Casualty Co. of Wisconsin and Iowa National Mutual Insurance Company, for damages for personal injuries sustained by Christopher Clark in a snowmobile accident. The plaintiffs alleged strict liability in tort as to all defendants and ordinary negligence as to Leisure Vehicles and its insurer in the design of the snowmobile which was being operated by Christopher at the time he was injured. Leisure Vehicles was the manufacturer of the snowmobile, Bay City Supply was the distributor and Clark Motors, the dealer.

Following a jury trial in the circuit court for Wood county, judgment was entered on the verdict dismissing the complaint of the plaintiffs on its merits. The plaintiffs appealed to the court of appeals and limited their appeal to the issues of causation and the validity of the verdict as it related to the negligence of Leisure Vehicles. The damage award was not challenged. The court of appeals affirmed the judgment in part, reversed in part and remanded the cause for a new trial on the issue of liability in negligence as between the plaintiffs and Leisure Vehicles, Inc.[1] We granted the petition of Leisure Vehicles for review.

We believe the significant issue on review is whether the verdict question concerning the causal negligence of Leisure Vehicles was fatally defective. Therefore, we but briefly summarize the facts.

On January 20, 1973, between 10:30 and 11 a.m., Christopher Clark, then thirteen years of age, participated in a snowmobile ride with his family and friends. The morning was clear and cold and the temperature was

---

[1] The decision of the court of appeals is unpublished.

approximately 20° F. The snowmobile trail was ice and hard-packed snow with no powdery snow.

Christopher was operating a 1973 model 44 TT 440cc. Raider snowmobile. The Raider snowmobile differs from conventional snowmobiles in that the engine is mounted in the rear and the operator sits down inside a cockpit with his feet extended forward under a plastic cowling. The throttle is similar to other snowmobile throttles except that the cable is about three times as long so as to reach from the throttle lever on the right front handle grip to the carburetor in the rear of the engine. The Raider snowmobile is equipped with a red button called a "kill switch." When depressed, this device stops the snowmobile's engine and it is available for use in emergencies. The "kill switch" is mounted on the throttle assembly 180 degrees away from and out of the sight of the operator, on the front side of the steering bar.

At the time of the accident Christopher Clark was seated forward in the driver's seat inside the cockpit of the snowmobile. His legs were spread apart so that his thighs were toward the outside of the snowmobile and his feet were together but not crossed. Jeff Knuesel, a friend, was also seated in the driver's seat inside the cockpit of the snowmobile with his thighs around Christopher's waist and his feet in Christopher's lap. The boys had operated the snowmobile in this manner on previous occasions without trouble or incident.

While Christopher and Jeff were traveling at about 15 m.p.h., Christopher exerted pressure on the throttle to accelerate the snowmobile. The machine accelerated, and when Christopher released the throttle, the machine continued to accelerate. The throttle and carburetor are intended to return the motor to idle speed when the pressure is removed from the throttle. Christopher testified that the throttle was stuck, but the throttle had never stuck on this machine on any prior occasion.

Christopher was able to steer the snowmobile around a curve during which time the machine "fish tailed," but he lost control after the curve and struck a tree just off the trail at a speed of about 45–50 m.p.h. Christopher testified that although he was aware of the location of the "kill switch," he did not attempt to hit it because he had no time to do so. The front left of the snowmobile struck the tree just inside the left front ski of the machine. Jeff Knuesel was thrown out and clear of the machine and he was not injured. Christopher stayed in the machine and his left ankle and lower leg were crushed when the front of the machine collapsed onto them. His left leg was ultimately amputated below the knee due to gangrene secondary to the injury.

The testimony established that Christopher's brother modified the Raider snowmobile prior to the accident. Specifically, he removed the original muffler from the snowmobile and installed a different muffler which produced heat causing the original throttle cable to melt. Before the accident occurred, he took off the modified muffler and installed a muffler of the same type as the original equipment, together with a new throttle cable.

The Raider snowmobile is designed to crush at a certain point in a frontal collision to protect the driver in the cockpit. The driver's feet are placed on a platform in the nose of the snowmobile. The platform is in the crush zone, but the defendant's expert testified that the platform is designed and installed at such an angle to the ground that the platform will move the driver's feet up and away from the crush zone upon impact. It was the testimony of the defense expert that if people are seated in the snowmobile in the fashion employed by Christopher and his friend, this would impede the ability of the driver's feet to come back into the cockpit and away from the crush zone in the event of a frontal collision.

There was also testimony that Raider snowmobiles have a tendency to accumulate snow and ice in the area of the carburetor at the throttle linkages when used in deep or powder snow.

Requested special verdict questions were submitted by both the plaintiffs and Leisure Vehicles and its insurer. At the conclusion of the testimony, the trial court held a conference to discuss the proposed jury instructions and proposed special verdicts. The court accepted the requested special verdict submitted by Leisure Vehicles and its insurer. Question 7 inquired as to whether Leisure Vehicles was negligent with respect to the design of the Raider snowmobile. Question 8 read:

"If you answer Question No. 7 'Yes', answer this question: Was such negligence of Leisure Vehicles, Inc. *the* cause of the injuries of Christopher Clark?" (Emphasis supplied.)

At the conference the trial court inquired whether there were any objections to the form of the verdict, and invited the attorneys to make a record in respect thereto. No objection or comment concerning the form of the verdict was made by any counsel.

The special verdict questions were submitted to the jury and the jury found no strict liability in tort. It found that Christopher Clark was not negligent; that Christopher's father, Arthur Clark, was negligent but that his negligence was not a cause of Christopher's injuries; and that Leisure Vehicles was negligent with respect to the design of the snowmobile, but that its negligence was not "the cause" of Christopher's injuries.[2]

---

[2] The questions and answers were as follows:

"Question No. 1: Was the Raider Snowmobile, when it left the possession of the manufacturer in such defective condition as to be unreasonably dangerous to the users thereof?

"ANSWER: *NO*

"Question No. 2: If you answer Question No. 1 'yes', answer this

On motions after verdict, the plaintiffs asked the trial court to find that the negligence of Leisure Vehicles was causal as a matter of law, or, in the alternative, to grant a new trial in the interests of justice on the issue of negligence or on all issues because the verdict was fatally defective in asking if the negligence of Leisure Vehicles was "the" cause, rather than "a" cause, of Christopher's injuries.

The trial court denied the plaintiffs' motions and held that there was credible evidence in the record to support the finding that the negligence of Leisure Vehicles was not a cause of Christopher Clark's injuries. The court

question: Was such defective and unreasonably dangerous condition a cause of the injuries of plaintiff Christopher Clark?

"ANSWER: —

"Question No. 3: Was the plaintiff Christopher Clark negligent with respect to the care he exercised for his own safety?

"ANSWER: *NO*

"Question No. 4: If you answer Question No. 3 'yes', answer this question: Was such negligence a cause of Christopher Clark's injuries?

"ANSWER: —

"Question No. 5: Was the plaintiff Arthur Clark, Jr., negligent with respect to the protection he exercised for the safety of Christopher Clark?

"ANSWER: *YES*

"Question No. 6: If you answer Question No. 5 'yes', answer this question: Was such negligence of Arthur Clark, Jr., a cause of the injuries of plaintiff Christopher Clark?

"ANSWER: *NO*

"Question No. 7: If you answered Question No. 1 'no', or if you answered Question No. 2 'no', answer this question: Was the defendant Leisure Vehicles, Inc. negligent with respect to the design of the Raider Snowmobile?

"ANSWER: *YES*

"Question No. 8: If you answer Question No. 7 'yes', answer this question: Was such negligence of Leisure Vehicles, Inc. the cause of the injuries of Christopher Clark?

"ANSWER: *NO*"

Questions 9 through 12 were damage and comparison questions, and are omitted.

also stated that although the form of question 8 of the special verdict was defective, the error was harmless. The three cause questions previous to question 8 correctly asked whether the negligence was "a" cause of the injuries, and the trial court was of the opinion that the jury's answers to any of the cause questions were not affected by the form of the questions. The trial court also believed that any error in the verdict was cured by the definition of cause included in its jury instructions.[3]

The trial court granted the defendants' motions for judgment on the verdict and judgment was entered dismissing the complaint of the plaintiffs on its merits.

The plaintiffs appealed to the court of appeals from this judgment, limiting their appeal to the issues of the causal negligence of Leisure Vehicles and the validity of the verdict. The court of appeals held that because the evidence as to whether Leisure Vehicles' negligence caused Christopher's injuries was conflicting, resolution of the question was for the jury. The court of appeals also held that the verdict was void because it misstated the substantive law of negligence, and ruled that the error in the verdict was preserved even though no ob-

---

[3] The court instructed the jury as follows:

"The cause questions, which are Questions 2, 4, 6 and 8, inquire as to whether or not there was a causal connection between the negligence of any person as found by you and the injuries sustained by Christopher Clark. Notice that these questions do not ask about the cause, but rather a cause. The reason for this is that there may be more than one cause of injury. The negligence of one person alone may cause such injury or the combined negligence of two or more parties may cause it.

"Before you may find that any person's negligence was a cause of the injury, you must find that this negligence was a substantial factor; that is, that it had a substantial influence in producing the injury. In other words, there must be such a real causal connection between the negligence on the one hand and the injury that the negligence under consideration was a factor actually operating which had a substantial effect in producing the injury."

jection was made by the plaintiffs, citing *Vroman v. Kempke,* 34 Wis.2d 680, 685, 686, 150 N.W.2d 423 (1967).[4] The court of appeals affirmed that part of the judgment dismissing the claim for strict liability in tort, but reversed and remanded for a new trial on the issue of negligence as between the plaintiffs and Leisure Vehicles.

After the petition for review was granted in this case, Bay City Supply Company; General Casualty Co. of Wisconsin; Clark Motors, Inc.; and Iowa National Mutual Insurance Company moved this court for an order summarily affirming the decision of the court of appeals with respect to the plaintiffs' claim in strict liability in tort. On December 27, 1979, this court summarily affirmed that portion of the court of appeals' decision affirming the trial court's judgment, in view of the fact that the issues of strict liability in tort involving the moving defendants were never presented to the court of appeals.

On this review the plaintiffs contend that question 8 of the special verdict was prejudicially defective in asking the jury whether the negligence of Leisure Vehicles was "the" cause, rather than "a" cause, of Christopher Clark's injuries. Leisure Vehicles argues that under sec. 805.13(3), Stats., the plaintiffs waived the error in the special verdict by failing to object to the form of the verdict at the conference in which the verdict was discussed.

Sec. 805.13(3), Stats., provides:

"(3) INSTRUCTION AND VERDICT CONFERENCE. At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the

---

[4] The decision of the court of appeals was mandated prior to *Gyldenvand v. Schroeder,* 90 Wis.2d 690, 280 N.W.2d 235 (1979).

motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. *Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.*" (Emphasis supplied.)

In *Gyldenvand v. Schroeder*, 90 Wis.2d 690, 694-697, 280 N.W.2d 235 (1979), this court held that sec. 805.13 (3), Stats., abolished the distinction between defects in the form of the verdict and substantive defects in the verdict by providing that failure to object to the verdict waives any error.[5] *See:* Graczyk, *The New Wisconsin Rules of Civil Procedure: Chapters 805–807,* 59 Marq. L. Rev. 671, 700 (1976). Thus, the plaintiffs waived the defect in the verdict by failing to object at the conference. And the court of appeals was incorrect in holding that the plaintiffs did not waive the error by their failure to object because the defect in the verdict was one of substance which rendered the verdict void.

The plaintiffs contend that they did not waive the error in the verdict because no one intended to submit the defective form of the verdict. The fact is that Leisure Vehicles *did* submit the verdict containing question 8. Under sec. 805.13(3), Stats., the plaintiffs' counsel was required to object to the verdict if he considered it to be defective, and pursuant to the provision of the statute, his failure to do so constituted waiver.

---

[5] Under the former practice, a defect in the form of the verdict was waived by failure to object, whereas a substantive defect rendered the verdict void. *See: Savina v. Wisconsin Gas Co.,* 36 Wis.2d 694, 701, 702, 154 N.W.2d 237 (1967); *Vroman v. Kempke,* 34 Wis.2d 680, 684–686, 150 N.W.2d 423 (1967).

However, the failure to make a timely assertion of error does not preclude this court from considering the issue of the defect in the verdict. Sec. 751.06, Stats., provides:

"751.06 **Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

Question 8 of the special verdict was clearly defective in asking whether the negligence of Leisure Vehicles was "the" cause of Christopher Clark's injuries. The proper inquiry is whether negligence is "a" cause of injury.

The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in producing the injury. *Merco Distg. Corp. v. Commercial Police Alarm Co.*, 84 Wis.2d 455, 458, 267 N.W.2d 652 (1978); *Rixmann v. Somerset Public Schools*, 83 Wis.2d 571, 585, 266 N.W.2d 326 (1978); *Sampson v. Laskin*, 66 Wis.2d 318, 325, 224 N.W.2d 594 (1975); *Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 236, 237, 55 N.W. 2d 29 (1952). It need not be the sole factor or the primary factor, only a "substantial factor." *Schnabl v. Ford Motor Co.*, 54 Wis.2d 345, 353, 354, 195 N.W.2d 602, 198 N.W.2d 161 (1972). The phrase "substantial factor" denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact,

as a reasonable person, to regard it as a cause, using that word in the popular sense. *Pieper v. Neuendorf Transportation Co.,* 87 Wis.2d 284, 289, 274 N.W.2d 674 (1979); *Merco Distg. Corp. v. Commercial Police Alarm Co., supra,* at 458, 459. There may be several substantial factors contributing to the same result. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis.2d 723, 735, 275 N.W.2d 660 (1979); *Sampson v. Laskin, supra,* at 325; *Blashaski v. Classified Risk Ins. Corp.,* 48 Wis. 2d 169, 174, 175, 179 N.W.2d 924 (1970).

The form of the special verdict question should refer to "a cause" or "a substantial factor" so that the jury will consider the verdict in accordance with the jury instructions,[6] which instruct the jury that there may be more than one cause of the injury. The question should never refer to "the cause," because the negligence of several parties or other factors may jointly cause the injury. To inquire about "the cause" is to contradict the definition of causation and the instructions to the jury.[7]

■ In *Reserve Supply Co. v. Viner,* 9 Wis.2d 530, 101 N.W.2d 663 (1960), the plaintiff brought an action for damages to its warehouse allegedly caused by the defendant's negligent construction of a water line. The verdict consisted of only two questions:

"Question 1. Was the defendant negligent in the manner in which he installed the eight-inch water main leading from the city water main to the plaintiff's premises?
"Answer: Yes.
"Question 2. If you answer question 1 'Yes,' then answer this question: Did such negligence cause such eight-inch water main to break, with the resulting damages?
"Answer: No."

---

[6] *See:* footnote 3 and Wisconsin Jury Instruction—Civil 1500.

[7] Decker and Decker, *Special Verdict Formulation in Wisconsin,* 60 Marq. L. Rev. 201, 251 (1977).

There was evidence from which a jury could find that several causes contributed to produce the rupture of the water line. This court stated:

"It is well settled in Wisconsin that when evidence supports a number of contributing causes, the charge and the verdict should recognize that possibility and it is error to confine the causation question to a single cause. *Berrafato v. Exner* (1927), 194 Wis. 149, 158, 216 N.W. 165. Our most-recent recognition of the possibility of multiple causes is:

" 'If the actor's negligent conduct is a substantial factor in bringing about the harm it is a legal cause of that harm. Restatement, 2 Torts, p. 1159, sec. 431.' *Wintersberger v. Pioneer Iron & Metal Co.* (1959), 6 Wis. (2d) 69, 74, 94 N.W. (2d) 136.

" . . . .

"The instruction implying only defendant's negligence as *the* cause, or *such* cause, particularly in connection with the similar implication of question 2 of the verdict, informed the jury that a single, exclusive cause, is to be determined. It is quite possible that the jury, unable to determine that defendant's negligence was the sole cause, would answer question 2 'No,' though it might believe defendant's negligence was a substantial factor in bringing about the harm." *Id.* at 532, 533.

The court held that question 2 and the accompanying instruction constituted prejudicial error requiring a new trial.

In the instant case, question 8 of the special verdict implied that only Leisure Vehicles' negligence was the cause of Christopher Clark's injuries. In order for the jury to have answered 8 "yes," it would have had to have found that the only cause was the negligence of Leisure Vehicles. And it is possible that the jury, unable to determine that Leisure Vehicles' negligence was the sole cause of Christopher's injuries, answered that question "no," although it believed that Leisure Vehicles' negligence was a substantial factor in producing the injuries.

The jury did not have an opportunity to answer the question as to whether the negligence of Leisure Vehicles was a cause of Christopher's injuries. The deliberations of the jury, when answering question 8, were not aided by the instructions, because an affirmative answer to the question would have required the jury to disregard the instruction on causation. Thus, we conclude the real issues in this case have not been fully tried and, pursuant to sec. 751.06, Stats., the case is remanded to the circuit court for a new trial on the issue of negligence as between the plaintiffs and Leisure Vehicles.

The plaintiffs also contend that the trial court should have found that Leisure Vehicles was causally negligent as a matter of law. Deciding this issue would require this court to review the record to determine whether there is any credible evidence to support the jury verdict. Since question 8 of the verdict, regarding the causal negligence of Leisure Vehicles, was defective and a new trial has been ordered, we do not decide if there was sufficient evidence to support that portion of the verdict finding no causal negligence on the part of Leisure Vehicles.

*By the Court.*—The decision of the court of appeals is affirmed.