R.W. Hernan Plumbing Corporation,
Plaintiff-Respondent,

v.

Anchor Savings & Loan Association, Dallas E. Dietter
and Mary E. Dietter, Defendants-Appellants-Petitioners,

Duaine Turner and Donna F. Turner, his wife, and
Thomas J. King, Defendants.

Supreme Court

No. 80–1277. Argued November 2, 1981.—
Decided December 1, 1981.

(Also reported in 312 N.W.2d 745.)

For the appellants-petitioners there were briefs (in court of appeals) by *Robert R. Stroud* and *Stroud, Stroud, Willink, Thompson & Howard* of Madison, and oral argument by *Robert R. Stroud.*

For the plaintiff-respondent there was a brief (in court of appeals) by *William J. Rameker, Janice K. Wex-*

*ler* and *Rameker & Rudoy, S.C.,* and oral argument by *Joseph F. Owens,* all of Madison.

BEILFUSS, C.J. This is a review of an unpublished opinion by the court of appeals which reversed a construction lien foreclosure judgment for plaintiff granted by the Dane County Circuit Court, WILLIAM D. BYRNE, Circuit Judge.

The circuit court found that R.W. Hernan Plumbing Corporation, the plaintiff, had fully complied with the requirements of ch. 289, Stats. 1973 (now ch. 779), in perfecting its construction lien, and therefore was entitled to a foreclosure judgment. The court of appeals reversed, holding that the plaintiff had not shown that it had contracted directly with the owner so as to qualify under sec. 289.02(1) (b).[1]

The factual record of the trial reveals the following: The Hernan Corporation contracted with the defendants Turner on April 1, 1974, to provide labor and materials in connection with the construction by the Turners of a duplex in the town of Windsor in Dane county. Hernan provided the labor and materials, but was not paid in full for them. It then filed a lien on the property. The parties agree that Hernan's status was that of a subcontractor. Hernan did not comply with the notice requirements of sec. 289.02(2) (b), Stats. 1973,[2] claiming

---

[1] "289.02 **Notice required to preserve lien rights; exceptions; saving clause; obligations of contractors.** (1) EXCEPTIONS TO NOTICE REQUIREMENT. The notice required to be given by lien claimants under sub. (2) shall not be required to be given in the following cases only:

"(a) . . .

"(b) By any lien claimant who has contracted directly with the owner for the work or materials furnished, unless the claimant is a prime contractor subject to the notice requirement of sub. (2) (a)."

[2] "(2) NOTICE TO OWNER, LENDER AND MATERIALMAN. (a) . . .

"(b) Every person other than a prime contractor who furnishes labor or materials for an improvement shall have the lien and

it was exempt under sec. 289.02(1)(b). This section provides an exception to the 60-day notice requirement to ". . . any lien claimant who has contracted directly with the owner for the work or materials furnished, unless the claimant is a prime contractor subject to the notice requirement of sub. (2)(a)." Thus, in order to be exempt, the plaintiff must have contracted directly with the owner. This is the key issue in this case because the defendants admit that the plaintiff has shown a prima facie case for contract damages. However, they argue that because the plaintiff failed to offer any proof at the trial that the Turners were the owners when the plaintiff contracted with them, the plaintiff has not met its burden of proof to perfect and foreclose a lien.

The plaintiff alleged in its complaint that the Turners were owners in fee simple at the time the contract was entered into, without reference to any record in the Register of Deeds office. There were subsequent conveyances of the property and a mortgage. In alleging these

---

remedy under this subchapter only if within 60 days after furnishing the first labor or materials he gives notice in writing, in 2 signed copies, to the owner either by personal service on the owner or his authorized agent or by registered mail with return receipt requested to the owner or his authorized agent at his last-known post-office address. The owner or his agent shall provide a copy of the notice received, within 10 days after receipt, to any mortgage lender who is furnishing or is to furnish funds for construction of the improvement to which the notice relates. The notice to the owner shall be in substantially the following language, with blanks accurately filled in: 'As a part of your construction contract, your contractor or builder has already advised you that those who furnish labor or materials for the work will be notifying you. The undersigned first furnished labor or materials on . . . (give date) for the improvement now under construction on your real estate as . . . (give legal description, street address or other clear description). Please give your mortgage lender the extra copy of this notice within 10 days after you receive this, so your lender, too, will know that the undersigned is included in the job.'"

subsequent conveyances and encumbrance, the complaint named the parties, made them defendants in the action and set forth these transactions by reference to the document records in the Register of Deeds office. The allegations are that the Turners quitclaimed to the defendant Thomas King; that King conveyed the property to the defendants Dallas E. Dietter and Mary E. Dietter by warranty deed; and that the Dietters executed a mortgage in favor of the defendant Anchor Savings & Loan Association.

Answers were filed on behalf of the Dietters and Anchor Savings and Loan. With the exception of the allegations in the complaint as to the identity of the parties and their interest in the property, they denied "information sufficient to form a belief" as to all other allegations in the complaint "and therefore denie[d] the same and put the plaintiff to its proof thereon."

At the time of trial, the Turners had received a discharge in bankruptcy and did not appear; King did not appear; and Mary E. Dietter had been dismissed as a defendant.

At the trial the plaintiff's attorney stated in his opening statement that he would prove the Turners owned the property at the relevant times. However, no evidence was offered to prove the Turners' ownership. The plaintiff now argues that the Turners' ownership was a matter of public record, ascertainable in the office of the Register of Deeds, and that a denial upon a lack of sufficient information as to form a belief is not sufficient to constitute a denial, and therefore the Turners' ownership was admitted by the pleadings.

The trial court did not make any specific findings on the issue of the Turners' ownership. The court simply found that the plaintiff had complied with the requirements of ch. 289, Stats., in perfecting its lien, and granted a judgment for the plaintiff. In reversing this judg-

ment, Judge Gartzke wrote for the court of appeals, holding that record ownership is not enough to prove "ownership" under ch. 289. Because the records of the Register of Deeds will not disclose whether a person was the actual owner of real estate on a date other than that shown in a recorded conveyance to the person, the appeals court held that the answer by appellants did not admit the allegation that the Turners were the owners at the time in question.

Judge Bablitch dissented from this opinion, reasoning that record ownership was sufficient under ch. 289, Stats. Sec. 289.01(2)(d) defines "owner" as "the owner of any interest in land." Record ownership would qualify as some interest in land. Because this ownership was readily ascertainable from public records, the dissenting opinion agreed with the plaintiff that the answer by the defendants did not place the issue in controversy and amounted to an admission by defendants.

We agree with the dissent that a denial based upon insufficient information to form a belief does not put into controversy items which are readily ascertainable from the public records. Wisconsin cases addressing the issue have upheld this rule on several occasions. In *Ferguson v. Kenosha*, 5 Wis. 2d 556, 568, 93 N.W.2d 460 (1958), this court stated that, "An allegation or denial based upon information and belief with respect to any matter of public record is a nullity." In the early case of *Goodell v. Blumer*, 41 Wis. 436, 444 (1877), the court discussed this rule, saying that, "The principle of these decisions is, that a party cannot plead ignorance of a public record to which he has access, and which affords him all the means of information necessary to obtain positive knowledge of the fact." *See also, Elmore v. Hill*, 46 Wis. 618, 1 N.W. 235 (1879).

Cases from other jurisdictions indicate widespread support for this rule. The court in *Porto Transport, Inc.*

*v. Consolidated Diesel Electric Corp.*, 20 FRD 1, 2 (S.D. N.Y. 1956), held that: "A defendant may not assert lack of knowledge or information as to matters of public record since an inspection of the record would reveal whether or not plaintiff was a qualified interstate carrier by motor vehicle." The Ninth Circuit has also applied this rule in *Oregon Mesabi Corp. v. C.D. Johnson Lumber Corp.*, 166 F.2d 997, 1001 (9th Cir. 1947), where the court wrote: "Mesabi also contends that by a denial on information and belief it raised the issue whether Johnson, a foreign corporation, had qualified for the transaction of business in Oregon and that Johnson had failed to prove the filing of the power of attorney with the Oregon Corporation Commissioner required by § 77–301, O.C.L.A. Where, as here, the inspection of the Commissioner's public records would disclose whether the filing had been made, its existence cannot be put in issue by a denial on information and belief." *See also United States v. Bartholemew*, 137 Fed. Supp. 700, 705 (W.D. Ark. 1956), and 2 Moore's *Federal Practice*, 2d ed., Sec. 8.22.

The majority opinion of the court of appeals agreed that pleading insufficient information was an improper answer if the actual truth of the matter could be discovered by consulting public records. But in this case, the truth of the fact alleged could not necessarily be found from the Register of Deeds. It is true that the owner of record may not be the actual owner at a certain time. We do not here decide whether record ownership is enough to qualify one as an owner for the purposes of ch. 289. This court has no way of knowing whether Turner possessed record ownership or any other interest on the relevant dates. As this case now stands, the real issue is whether the Turners owned any interest in the property on the date the work commenced. This issue has not been factually resolved. Therefore we exercise our discretionary powers under sec. 751.06,

Stats.,[3] and reverse and remand to the trial court for a new trial to determine the ownership of the real property on the appropriate date. We believe that this remand is necessary in the interest of justice because the real controversy has not been fully tried. The parties will have the right to amend their pleadings, if they so desire, so that this issue may be properly framed and determined. Plaintiff should have the opportunity at the new trial to prove whatever interest Turner had in the real property on the pertinent date.

This exercise of discretionary power under sec. 751.06, Stats., is consistent with our opinions in *Lowe v. Cheese Makers Mut. Casualty Co.,* 265 Wis. 365, 368, 61 N.W.2d 317 (1953) ; *Wagner v. Wagner,* 80 Wis. 2d 299, 304, 259 N.W.2d 60 (1977) ; *Schmidt v. Mueller,* 53 Wis. 2d 311, 321, 193 N.W.2d 161 (1972) ; and *Ampex Corp. v. Sound Institute, Inc.,* 44 Wis. 2d 674, 686, 172 N.W.2d 170 (1969).

*By the Court.*—The decision of the court of appeals is reversed and remanded to the circuit court for a new trial.

DAY, J., took no part.

---

[3] "751.06 **Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."