Georgia Ann VOLLMER, Plaintiff-Appellant, †

UNITED STATES FIDELITY & GUARANTEE COMPANY, a Maryland company, Plaintiff,

v.

Paul LUETY, and American Family Mutual Insurance Company, a Wisconsin corporation, Defendants-Respondents.

Court of Appeals

*No. 88-0092. Submitted on briefs November 7, 1988.—Decided May 11, 1989.*

(Also reported in 443 N.W.2d 32.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Edward Grutzner* and *Grutzner, Byron, Holland & Vollmer, S.C.,* of Beloit.

For the defendants-respondents the cause was submitted on the brief of *Thomas F. Berg,* of Janesville.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.   On December 22, 1988, in an unpublished per curiam opinion, we reversed a judgment dismissing the plaintiff's complaint against the defendant and his insurer and remanded the matter for further proceedings. The defendants petitioned the supreme court for review. The supreme court granted the petition and remanded the matter to us "for further consideration in light of this court's decision in *State v. Schumacher,* 144 Wis. 2d 388, 424 N.W.2d 672 (1988)." We have done so, and we conclude that our original decision was correct. For that reason, we reinstate our mandate reversing the judgment appealed from and remanding the matter.

The facts are as follows. Defendant Luety was cutting grass on his property along a highway when his mower ejected an asphalt chunk which struck plaintiff Vollmer as she rode by in a car. The special verdict question on liability, answered "no" by the jury, asked whether Luety was negligent in maintaining his premises. The trial court refused to submit Vollmer's pro-

posed question which asked whether Luety was negligent immediately prior to or at the time of Vollmer's injury. On appeal, we concluded that the real controversy had not been tried, and we reversed and remanded for a new trial on liability.

We reasoned as follows: Vollmer had alleged in her complaint and submitted evidence at trial to show that Luety's negligent operation of the mower caused her injury. By asking whether Luety negligently maintained the premises, the court focused the jury's attention on the physical condition of the roadside, not on Luety's conduct at the time of the accident. We concluded that whether Luety was liable in the manner alleged by Vollmer had not been tried. Although Luety claimed that Vollmer did not properly object to the verdict, we concluded that any such waiver did not prevent us from exercising our discretionary power of reversal under sec. 752.35, Stats., citing *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 617, 292 N.W.2d 630, 635 (1980).

*Clark* was an action for personal injury sustained by the plaintiff in a snowmobile accident. The theory of the plaintiffs was strict liability and ordinary negligence in the design of the snowmobile. Following a jury trial, a judgment was entered on the verdict dismissing the complaint on its merits, and the plaintiffs appealed. Plaintiffs contended that the special verdict was defective because it asked whether defendant's negligence was "the cause" of the plaintiff's injuries, rather than "a substantial factor" or "a cause." In an unpublished opinion, we reversed the judgment in part and remanded for a new trial on the issues of liability and negligence. *Id.* at 609, 292 N.W.2d at 631.

On review, the supreme court affirmed. Although the plaintiffs had waived the defective verdict by failing to object at the instruction conference, the *Clark* court

held that "the failure to make a timely assertion of error does not preclude this court from considering the issue of the defect in the verdict" under its discretionary power in sec. 751.06, Stats. *Id.* at 616–17, 292 N.W.2d at 635. The court held,

> The jury did not have an opportunity to answer the question as to whether the negligence of Leisure Vehicles was a cause of Christopher's injuries. The deliberations of the jury, when answering question 8, were not aided by the instructions, because an affirmative answer to the question would have required the jury to disregard the instruction on causation. Thus, we conclude the real issues in this case have not been fully tried and, pursuant to sec. 751.06, Stats., the case is remanded to the circuit court for a new trial on the issue of negligence as between the plaintiffs and Leisure Vehicles.

*Id.* at 620, 292 N.W.2d at 636.

*Schumacher* dealt with the power of the court of appeals to review unobjected-to errors in the instructions and the verdict as well as the power of the court of appeals to reverse under sec. 752.35, Stats. Section 752.35 is the counterpart of sec. 751.06, Stats., which describes the supreme court's power of discretionary reversal.[1] The *Schumacher* court held that sec.

---

[1]Section 751.06, Stats., provides:

> In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

805.13(3), Stats., which provides that "[f]ailure to object at the [instruction] conference constitutes a waiver of any error in the proposed instructions or verdict," eliminated the common-law exceptions to the waiver rule and therefore the court of appeals no longer possesses a discretionary power to review unobjected-to errors in the instructions or verdict. 144 Wis. 2d at 401–02, 407–408, 424 N.W.2d at 677, 679. The *Schumacher* court also held, however, that the court of appeals retains its discretionary power of reversal under sec. 752.35, as interpreted by *State v. Wyss,* 124 Wis. 2d 681, 370 N.W.2d 745 (1985). *Schumacher,* 144 Wis. 2d at 408, 424 N.W.2d at 680.

Earlier in its opinion, the *Schumacher* court said

> Over the course of this statute's life [referring to sec. 752.35, Stats.], this court has often been called upon to interpret the scope of the discretionary-reversal power granted to both this court and to the court of appeals. As was summarized in the recent case of *State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745 [770–71] (1985), several different principles developed. First, under the "real controversy not fully tried" category, two different situations *were included:* (1) Either the jury was not given an opportunity to hear important testimony that bore on an

---

Section 752.35, Stats., provides:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

important issue in the case, or (2) the jury had before it testimony or evidence which had been improperly admitted, and this material obscured a crucial issue and prevented the real controversy from being fully tried.

Under the second prong of the discretionary-reversal statute, the "miscarriage of justice" prong, the case law made clear that, in order to grant a discretionary reversal under this prong, the court would have to conclude that there would be a substantial probability that a different result would be likely on retrial. *Wyss,* 124 Wis. [2d] at 741, [370 N.W.2d at 773].

*Schumacher,* 144 Wis. 2d at 400–01, 424 N.W.2d at 676–77 (emphasis added).

We emphasize the words "were included" because we believe that neither the *Schumacher* court nor the *Wyss* court intended that secs. 751.06 and 752.35, Stats., limit situations in which the real controversy has not been tried to the two evidentiary circumstances described in *Wyss.* The *Wyss* court said of secs. 751.06 and 752.35:

The case law reveals that situations in which the controversy may not have been fully tried have arisen in two factually distinct ways: (1) when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case; and (2) when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried.

124 Wis. 2d at 735, 370 N.W.2d at 770–71 (citations omitted). The court did not say that situations in which the controversy may not have been fully tried had arisen in *only* two factually distinct ways.

897

Indeed, while the *Wyss* court referred briefly to situations in which the real controversy had not been fully tried, a discussion of the full range of such situations was unnecessary. The court of appeals had ordered a new trial on grounds that justice had miscarried. *Id.* at 732–33, 370 N.W.2d at 769. The court of appeals had not reversed on grounds that the real controversy had not been tried. For that reason, the circumstances under which either the supreme court or the court of appeals may reverse on making such a determination was not before the *Wyss* court.

That undoubtedly is why the *Wyss* court confined to a single paragraph its discussion of circumstances in which the real controversy had not been fully tried. Consistent with that brevity, the *Wyss* court cited four cases involving situations where the jury did not hear important testimony or where the jury heard evidence not properly admitted.[2]

When applying sec. 751.06, Stats., and its predecessors, the supreme court has frequently concluded that the real controversy has not been tried in other situations. It did so in a leading case holding that sec. 805.13(3), Stats., prevents a party from raising an unobjected-to error in instructions on appeal: *Air Wisconsin, Inc. v. North Cent. Airlines, Inc.,* 98 Wis. 2d 301, 296 N.W.2d 749 (1980). After concluding that defendant-appellant had waived the instructional error, the *Air Wisconsin* court stated that it was not precluded from reviewing the claimed error in the instruction. *Id.* at 317, 296 N.W.2d at 756. The court cited *Clark* as

---

[2]The four cases are *State v. Cuyler,* 110 Wis. 2d 133, 142–43, 327 N.W.2d 662, 667 (1983), *Garcia v. State,* 73 Wis. 2d 651, 654–56, 245 N.W.2d 654, 655–56 (1976), *Logan v. State,* 43 Wis. 2d 128, 137, 168 N.W.2d 171, 175–76 (1969), and *Lorenz v. Wolff,* 45 Wis. 2d 407, 426, 173 N.W.2d 129, 138–39 (1970).

holding that even though a party had waived the claimed error in the special verdict by failing to make an objection at the instruction and verdict conference, "the court would review the claimed error pursuant to sec. 751.06, Stats." *Air Wisconsin,* 98 Wis. 2d at 317, 296 N.W.2d at 756. The *Air Wisconsin* court said that it could not conclude that defendant would probably win on a retrial, but it could conclude

> that the [unobjected-to] instruction played a significant role in the jury's determination of causal negligence, and that the instruction, if erroneous, prevented the defendant from having a full, fair trial of the issues of the case . . .. We conclude that if the law . . . was misstated, as the defendant contends, there was a probable miscarriage of justice because the issue of liability has not been fully or properly tried. Accordingly, we conclude that in the interest of justice we shall review the question [of instructional error] . . ..

*Id.* at 318, 296 N.W.2d at 756. The court then held that the unobjected-to instruction was erroneous, and remanded the case for a new trial on the question of liability. Id. at 327, 296 N.W.2d at 761.

In other relatively recent decisions, the Supreme Court has held that the real controversy has not been tried (whether or not those very words were used) in situations in addition to the two described by *Wyss. See In Interest of C.E.W.,* 124 Wis. 2d 47, 55–57, 368 N.W.2d 47, 52–53 (1985) (misstatement of law in instructions on key issue); *Merrill Lynch, Pierce, etc. v. Boeck,* 127 Wis. 2d 127, 141–42, 377 N.W.2d 605, 611–12 (1985) (party's reliance on court's erroneous decision to submit instruction on fiduciary theory meant party did not pursue claim under proper theory of case); *Stivarius v. DiVall,* 121 Wis. 2d 145, 153–58, 358 N.W.2d 530,

534-37 (1984) (confusion following remand); *Hernan Plumbing v. Anchor Savings & Loan,* 104 Wis. 2d 532, 537-38, 312 N.W.2d 745, 748-49 (1981) (plaintiff offered no evidence and trial court made no findings whether defendant had ownership of or interest in property in foreclosure case); *First Nat. Bank & Trust Co. v. Notte,* 97 Wis. 2d 207, 225-26, 293 N.W.2d 530, 539 (1980) (proper theory of case not advanced at trial); *In Matter of Estate of Alexander,* 75 Wis. 2d 168, 189, 248 N.W.2d 475, 486 (1977) (parties and trial court failed to consider issue of liability on an agreement); *Wagner v. Wagner,* 80 Wis. 2d 299, 304, 259 N.W.2d 60, 62 (1977) (trial court and parties failed to determine right of plaintiff to other applicable remedies in action to obtain rescission of deed); *Merco Distrib. Corp. v. O & R Engines, Inc.,* 71 Wis. 2d 792, 797-98, 239 N.W.2d 97, 100-01 (1976) (trial court and counsel mistakenly believed jurisdiction could be resolved by argument without evidence); and *Banks v. State,* 51 Wis. 2d 145, 158-60, 186 N.W.2d 250, 256-57 (1971) (trial court had not fully considered self-defense privilege).[3]

In a substantial number of older decisions the supreme court held that the real controversy had not been tried in many situations in addition to the two described by the *Wyss* court. *See Ampex Corp. v. Sound Institute, Inc.,* 44 Wis. 2d 674, 686, 172 N.W.2d 170, 176 (1969) (business status existing between defendants not

---

[3]In *State v. Ambuehl,* 145 Wis. 2d 343, 366-67, 425 N.W.2d 649, 658 (Ct. App. 1988), we relied on some of these precedents and *Clark* for our conclusion that we could order a new trial in a criminal case if an unobjected-to instruction prevented the real controversy from being tried. The state agreed that the *Wyss* court did not intend to limit the situations in which the real controversy has not been tried to the two that court described. *Ambuehl,* 145 Wis. 2d at 366, 425 N.W.2d at 658.

tried); *Bostonian Homes, Inc. v. Struck,* 44 Wis. 2d 553, 559-60, 171 N.W.2d 320, 323 (1969) (inadequacies of record); *Cable v. Marinette County,* 17 Wis. 2d 590, 596, 117 N.W.2d 605, 609 (1962) (trial court incorrectly directed verdict on issue of contributory negligence); *Giemza v. Allied American Mut. Fire Ins. Co.,* 10 Wis. 2d 555, 560-61, 103 N.W.2d 538, 541-42 (1960) (trial court refused to include special verdict on issue raised by defense); *Nelson v. Hansen,* 10 Wis. 2d 107, 120-21, 102 N.W.2d 251, 258-59 (1960) (court failed to submit question of defendant's negligence to jury); *Grinley v. Eau Galle,* 274 Wis. 177, 180, 79 N.W.2d 797, 799 (1956) (in action against town for damages for a taking, town's answer stated willingness to pay fair compensation, but that issue "overlooked in submitting the case to the jury"); *Lowe v. Cheese Makers Mut. Casualty Co.,* 265 Wis. 365, 367-68, 61 N.W.2d 317, 318-19 (1953) (judgment improperly granted on basis of defense raised in defendant's trial brief but not pleaded in its answer, since plaintiff would have offered evidence on point if given notice by answer); *Erickson v. Westfield Milling & Electric Light Co.,* 263 Wis. 580, 589, 58 N.W.2d 437, 441 (1953) ("record of the whole case shows such an abundance of misunderstanding, cross-purposes, and frustration that dismissal would leave us with a strong belief that the issues had not been fully tried nor justice done"); *Simonz v. Brockman,* 249 Wis. 50, 54-55, 23 N.W.2d 464, 466 (1946) (issues existed which were insufficiently pleaded and proved as to amount recoverable by seller in contract case); *Koscuik v. Sherf,* 224 Wis. 217, 222, 272 N.W. 8, 10 (1937) (trial court improperly determined that speed was so great that defendant could not stop automobile to avoid train when no evidence on stopping distance presented); *Krudwig v. Koepke,* 223 Wis. 244, 248-50, 270 N.W. 79, 81-82 (1936) (faulty

instructions); *Walter v. Four Wheel Drive Auto Co.,* 213 Wis. 559, 572, 252 N.W. 346, 350–51 (1934) (record on commission rate incomplete and did not afford satisfactory basis for any finding on subject to reasonable certainty); *Will of Burns,* 210 Wis. 499, 505–07, 246 N.W. 704, 706 (1933) (court failed to determine all issues litigated in regard to testate status of deceased); *Bendix v. Ross,* 205 Wis. 581, 585, 238 N.W. 381, 382 (1931) (jury not instructed to decide crucial issue whether defendant enriched by his unjust or wrongful conduct); *Rowell v. Rhadans,* 171 Wis. 86, 89–90, 175 N.W. 937, 938 (1920) ("real question in the case, as to whether the description inserted in the deed was inserted by mutual mistake of the parties, was neither presented by the pleadings nor tried by the court"); and *Knudson v. George,* 157 Wis. 520, 524, 147 N.W. 1003, 1004–05 (1914) (crucial issue of defendant's negligence in locating land overlooked by trial court and parties).

Had the *Wyss* court intended to hold that except in the two situations it described, neither the supreme court nor the court of appeals may reverse under secs. 751.06 and 725.35, Stats., on grounds that the real controversy has not been tried, we believe it would have expressly overruled its many past decisions to the contrary. The careful language used by the *Wyss* court, and by the *Schumacher* court when describing *Wyss,* shows that neither court intended to destroy the usefulness of secs. 751.06 and 752.35 when the parties, trial court or jury fail for any reason to come to grips with a dispositive issue.

We have considered the possibility that the legislature intended the power of the court of appeals under sec. 752.35, Stats., to be less than that of the supreme court under sec. 751.06, Stats. We think that possibility unlikely. The two statutes are virtually identical.

Although sec. 752.35, Stats., was not created until 1977, it reflects the venerability of sec. 751.06, Stats., on which it is modeled. As noted in *Schumacher,* 144 Wis. 2d at 399–400, 424 N.W.2d at 676, sec. 751.06 can be traced back to sec. 2405m, Stats. 1913, which was created by ch. 214, Laws of 1913. A comparison of sec. 751.06 and sec. 2405m shows no significant differences.[4] The only amendment to the original language occurred in 1977, when it was renumbered as sec. 751.06 and made more concise. See ch. 187, sec. 76, Laws of 1977. The same act made the court of appeals operational and adopted the language of sec. 751.06 as the basis of sec. 752.35,[5] undoubtedly in response to the direction in Wis. Const. art. VII, sec. 5(3), that the court of appeals for each district "shall have appellate jurisdiction . . . as the legislature may provide by law."

The absence of significant amendments to sec. 751.06, Stats., between 1913 and the creation of the court of appeals in 1977 show that the legislature acquiesced in the supreme court's interpretations of the stat-

---

[4]Section 2405m, Stats. 1913, provides:

> In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice.

[5]The court of appeals became operational by virtue of, and sec. 752.35, Stats., was created by ch. 187, sec. 112, Laws of 1977.

ute and its predecessors, which held that the real controversy was not tried in a variety of situations in addition to those described in *Wyss*. A longstanding judicial interpretation of a statute becomes part of the statute itself. *In re Estate of Haese,* 80 Wis. 2d 285, 294, 259 N.W.2d 54, 58 (1977). Because secs. 751.06 and 752.35, Stats., are almost identical, that longstanding interpretation of sec. 751.06 and its predecessors has become a part of sec. 752.35. It follows that the court of appeals, like the supreme court, has the power to conclude that the real controversy has not been tried in many situations in addition to the two described in *Wyss*.

We have also considered whether secs. 751.06 and 752.35, Stats., ought to be construed differently, in view of the different functions assigned to the supreme court and to the court of appeals. The purpose of the supreme court is to oversee and implement the statewide development of the law, and it has a law-declaring function of "determining on common-law principles what the law should be in view of the statutory and decisional law of the state and in view of the general trend of the law." *Schumacher,* 144 Wis. 2d at 405, 424 N.W.2d at 678 (quoting *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 229–30, 340 N.W.2d 460, 464–65 [1983]). As an error-correcting court, the court of appeals lacks the law-developing or law-declaring function. *Schumacher,* 144 Wis. 2d at 407, 424 N.W.2d at 679.

But the functions of the court of appeals have never been thought of as restricted only to error-correcting. In January 1973, when recommending the creation of a court of appeals, the Citizens Study Committee on Judicial Organization said: "The function of the Court of Appeals should be to provide a reasonably available appeal to correct trial court errors *and to do justice*

*expeditiously among the litigants." Report to Governor Lucey* 80 (1973) (emphasis added). The Committee commented: "The court of appeals should not often be forging new bodies of law or writing lengthy opinions. This court's *primary* objective should be to do justice in individual cases." *Id.* at 81 (emphasis added).

. To implement the 1977 constitutional amendment creating a court of appeals, the Legislative Council appointed a special committee and directed it to prepare legislation setting up the court of appeals. "The committee in preparing this legislation used as its principal guide the 1973 report of the Citizens Study Commission [sic] on Judicial Organization . . .." *In re Court of Appeals of Wisconsin,* 82 Wis. 2d 369, 370, 263 N.W.2d 149 (1978). And, as we have emphasized, that legislation created sec. 752.35, Stats.

Section 752.35, Stats., is adapted to the "justice between the parties" function of the court of appeals as contrasted to the law-declaring/law-developing functions of the supreme court. Like sec. 751.06, Stats., sec. 752.35 refers twice to "justice," the first reference being to the power to reverse if "it is probable that justice has for any reason miscarried."[6] Doing justice between the parties, of course, extends to other circumstances. If it appears from the record that "the real controversy has not been fully tried," that, too, is an injustice as between the parties. The *Air Wisconsin* court recognized this form of injustice when it concluded that if the law had been misstated in the unobjected-to instructions before it, "there was a probable miscarriage of justice *because* the issue of liability has not been fully or properly tried." 98 Wis. 2d at 318, 296 N.W.2d at 756 (emphasis added).

---

[6]The second reference is to the final word of the statute, which describes the broad remedial actions the court of appeals may take.

■ Since sec. 752.35, Stats., is tailored to doing justice between the parties, the court of appeals does not necessarily develop or declare law when exercising its discretionary power under that statute. For that reason, the power of the court of appeals under sec. 752.35 does not encroach upon the law-developing or law-declaring function of the supreme court.

■ We recognize that cases infrequently occur in which the real controversy has not been tried. For that reason, our discretionary power of reversal on that ground need rarely be exercised. It is the exceptional case in which a party who fails to object to an instruction or verdict will avoid the effects of the waiver rule of sec. 805.13(3), Stats. Section 752.35, Stats., does not resurrect the common-law exceptions to the waiver rule.

■ Having reconsidered our prior opinion in light of *Schumacher* and *Wyss,* we conclude that we are empowered by sec. 752.35, Stats., to reverse the judgment in this matter and to order a new trial on grounds that the defective verdict resulted in the real controversy not having been tried, and we do so.

*By the Court.*—The decision filed December 22, 1988, is confirmed.