Georgia Ann VOLLMER, Plaintiff-Appellant,

UNITED STATES FIDELITY & GUARANTEE COMPANY, a Maryland company, Plaintiff,

v.

Paul LUETY, and American Family Mutual Insurance Company, a Wisconsin corporation, Defendants-Respondents-Petitioners.

Supreme Court

*No. 88-0092. Argued March 6, 1990.—Decided June 26, 1990.*

(Also reported in 456 N.W.2d 797.)

For the defendants-respondents-petitioners there were briefs by *Thomas F. Berg,* Janesville, and oral argument by *Thomas F. Berg.*

For the plaintiff-appellant there was a brief by *Edward Grutzner* and *Grutzner, Byron, Holland & Vollmer,* Beloit, and oral argument by *Edward Grutzner.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published court of appeals decision. *Vollmer v. Luety,* 150 Wis. 2d 891, 443 N.W.2d 32 (Ct. App. 1989). This case involves the scope of the court of appeals statutory discretionary reversal power under sec. 752.35, Stats. This court originally accepted the defendant's petition for review in this case on March 7, 1989, and remanded the case to the court of appeals with directions to reconsider its December 22, 1988 unpublished decision in light of this court's opinion in *State v. Schumacher,* 144 Wis. 2d 388, 424 N.W.2d 672 (1988). On remand, the court of appeals reaffirmed its earlier decision which reversed the trial court's judgment entered on the jury's verdict dismissing the plaintiff's negligence complaint. The court of appeals reversed on the grounds that the real controversy in the case had not been fully tried, pursuant to sec. 752.35, Stats. The defendant now seeks review of the court of appeals decision which concluded that it had properly applied *Schumacher* in the original case.

3

We affirm the decision of the court of appeals, concluding that it properly applied *State v. Schumacher*, because the error which the plaintiff failed to preserve for appellate consideration by a proper objection, an allegedly deficient verdict question, appears from the record to have prevented the real controversy from being fully tried, and hence, under the provisions of sec. 752.35, Stats., it was within the court of appeals' statutory discretion to reverse the judgment and to remand for a new trial.

The underlying facts of this case are as follows. Plaintiff stated in her initial complaint that defendant was negligent in his operation of a large rotary mower when cutting tall grass along a roadside and that his negligence caused the mower to eject an asphalt chunk which smashed through the plaintiff's closed car window and struck the plaintiff's arm as she drove by in her car. Plaintiff submitted the following written request for special verdict questions to the court prior to trial.

1. Was the defendant, Paul Luety negligent immediately prior to and at the time of the injury to plaintiff, Georgia Ann Vollmer, on June 25, 1983?
2. Was such negligence of Paul Luety a cause of the injuries of Georgia Ann Vollmer?
3. What sum of money will fairly and reasonably compensate Georgia Ann Vollmer for damages sustained in the accident?

Although it was plaintiff's theory of the case that defendant was negligent in operating the power mower, the special verdict question given to the jury inquired only whether the defendant was negligent in the maintenance of his premises. The special verdict questions submitted to the jury were:

4

1. At the time of, or prior to the accident, was the defendant, Paul Luety, negligent in his maintenance of the premises in question?
2. Was the negligence of the defendant, Paul Luety, a cause of injury to the plaintiff?
3. At the time of, or prior to the accident, was the manufacturer of the mower used by Paul Luety negligent in the construction or design of said mower?
4. Was the negligence of the manufacturer of the mower operated by Paul Luety a cause of injury to the plaintiff?

The jury answered "no" to all of these questions.

In a post-trial motion, plaintiff requested that the trial court change these answers from "no" to "yes" because the trial judge had submitted an improper verdict question to the jury. Plaintiff stated that, instead of inquiring whether the defendant was negligent in the maintenance of his premises, the jury should have been asked whether the defendant was "negligent immediately prior to and at the time of the injury to plaintiff."

Defendant filed a brief in opposition to plaintiff's post-trial motion, claiming that plaintiff failed to object on the record to the special verdict question as required by sec. 805.13(3), Stats., at the instruction and verdict conference or at any other time.

Counsel for the plaintiff concedes and the record reflects that, while he objected to the jury instructions, he failed to object to the special verdict question which inquired whether the defendant was negligent in the maintenance of his premises, instead of negligent in the operation of the mower. In oral argument before this court, counsel for the plaintiff indicated that he was not aware at the time of the conference with the trial court that the special verdict question contained the "negli-

gent in the maintenance of his premises" language, and that it was an oversight on his part that he failed to notice the language of the verdict question.

The trial court denied plaintiff's post-trial motion requesting either a change in the jury verdict or a new trial. Judgment was entered in favor of the defendant and plaintiff's complaint was dismissed. Plaintiff appealed.

The court of appeals, in an unpublished per curiam decision, reversed the trial court's judgment and remanded for further proceedings. *Vollmer v. Luety,* No. 88–0092, unpublished slip op. (Wis. Ct. App. Dec. 22, 1988). The court of appeals concluded that, although the plaintiff failed to object to the special verdict question submitted to the jury, as required under sec. 805.13(3), Stats., it could reverse the trial court's decision under its discretionary power of reversal under sec. 752.35, Stats., citing *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 617, 292 N.W.2d 630, 635 (1980), because the real controversy had not been tried.

As stated above, defendants petitioned this court for review of the court of appeals' original 1988 decision. This court granted the petition, but remanded the matter to the court of appeals for further consideration in light of this court's decision in *State v. Schumacher,* 144 Wis. 2d 388, 424 N.W.2d 672 (1988).

Pursuant to the directive of this court, the court of appeals, in a published decision, reconsidered its original decision and concluded that it was correct. It reinstated its mandate reversing the judgment appealed from and remanded the case for a new trial. *Vollmer v. Luety,* 150 Wis. 2d 891, 443 N.W.2d 32 (Ct. App. 1989).

The court of appeals set forth its interpretation of *Schumacher.* The court of appeals explained that, although this court stated in *Schumacher* that the court

6

of appeals does not have common-law discretionary power under the "integrity of the fact-finding process" line of cases to review unobjected-to errors in the instructions or verdict questions, it did not believe that the supreme court's decisions in either *State v. Schumacher* or *State v. Wyss*, 124 Wis. 2d 681, 370 N.W.2d 745 (1985), intended to limit the power of either the supreme court or the court of appeals to reverse under secs. 751.06 and 752.35, Stats., when the real controversy had not been tried, to the two evidentiary circumstances described in *Wyss*.[1] The court of appeals cited several opinions in which the supreme court reversed a decision on the grounds that the real controversy had not been fully tried in situations other than the two evidentiary situations mentioned in *Wyss*, including cases where counsel failed to object to a jury instruction or verdict question. The court of appeals then turned to the statutes which grant the supreme court and the court of appeals discretionary power to reverse judgments when the real controversy has not been fully tried or when it is probable that justice has for any reason miscarried. Sec. 751.06, Stats. (discretionary reversal power of supreme court), and 752.35, Stats. (discretionary reversal power of court of appeals).[2] The court of appeals reasoned that,

---

[1] The two evidentiary situations mentioned in *Wyss* were: evidence improperly excluded and evidence improperly admitted. *Wyss*, 124 Wis. 2d at 735.

[2] **751.06 Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure

7

because the language of these two statutes is identical, the longstanding interpretation of sec. 751.06, Stats., became a controlling interpretive gloss on sec. 752.35, Stats. Accordingly, the court concluded that, under the discretionary reversal statutes, "the court of appeals, like the supreme court, has the power to conclude that the real controversy has not been tried in many situations in addition to the two described in *Wyss*." 150 Wis. 2d at 904.

Finally, the court of appeals considered whether secs. 751.06 and 752.35, Stats., should be construed differently in light of the different functions assigned to the supreme court and the court of appeals. Because sec. 752.35 is tailored to doing justice between the parties in an individual case, the court of appeals concluded that it was not encroaching upon the law-developing or law-declaring function of the supreme court. *Id.* at 906.

Defendants have once again petitioned this court for review of the court of appeals decision. This court granted the petition to consider the scope of the court of appeals' power under the provisions of sec. 752.35, Stats., to reverse judgments.

in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

**752.35 Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

8

Although plaintiff argues that the objection to the special verdict question was not waived because she objected to the jury instruction, as set forth above plaintiff concedes and the record reflects that plaintiff failed to object to the special verdict question which was submitted to the jury. This court concludes that plaintiff's objection to the jury instruction did not constitute an objection to the special verdict question submitted to the jury that would as a matter of right enable the plaintiff to review.

Because plaintiff failed to object to the special verdict question, the error, if any, is waived under sec. 805.13(3), Stats. Section 805.13(3), which governs objections to jury instructions and verdict questions, specifically provides:

> **(3)** INSTRUCTION AND VERDICT CONFERENCE. At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. *Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.* [Emphasis supplied.]

In *Air Wisconsin, Inc. v. North Central Airlines, Inc.,* 98 Wis. 2d 301, 311, 296 N.W.2d 749 (1980), this

9

court emphasized the importance of the rule (sec. 805.13(3), Stats.) requiring that a particularized objection be made and that the grounds for objection to both jury instructions and special verdict questions be stated on the record. This court stated, "in the absence of a specific objection which brings into focus the nature of the alleged error, a party has not preserved its objections for review." Unlike *Air Wisconsin,* where counsel objected, but failed to set forth the grounds for the objection on the record, in this case counsel failed to object to the special verdict question at all, until the jury was ready to announce its verdict.

This court has continuously emphasized the importance of making proper objections as a prerequisite to assert, as a matter of right, an alleged error on appeal. Section 805.13(3), Stats., is but a particularized application of the general rule that only those issues raised at trial can be raised on appeal. In *Wells v. Dairyland Mut. Ins. Co.,* 274 Wis. 505, 518, 80 N.W.2d 380 (1957), Justice Currie, writing for this court, stated, "[w]e deem the correct rule to be that no error of the court should be reviewable *as a matter of right* on appeal without first" properly preserving the error in the trial court. Likewise, in *Cappon v. O'Day,* 165 Wis. 486, 162 N.W. 655 (1917), Justice Rosenberry stated, "[o]ne of the rules of well nigh universal application established by courts in the administration of the law is that questions not raised and properly presented for review in the trial court will not be reviewed on appeal."

There are many justifications for this rule. *See* Martineau, *Modern Appellate Practice: Federal and State Civil Appeals* (1983), sec. 3.2. First, it is the role of an appellate court to correct errors made by the trial court, not to rule on matters never considered by the trial

10

court. Second, requiring objections at trial allows the trial judge an opportunity to correct or to avoid errors, thereby resulting in efficient judicial administration and eliminating the need for an appeal. This is precisely the failure that occurred in this case. Because counsel failed to object to the special verdict question, the trial judge did not have an opportunity to correct the error and submit a proper verdict question to the jury. Third, if attorneys are not required to raise issues at the trial court level, there is less of an incentive for attorneys to diligently prepare their cases for trial. In fact, some attorneys might be induced to build in an error to ensure access to the appellate court, notwithstanding their deficient performance at trial. Finally, this court will not consider an issue for the first time on appeal because it may result in hardship to one of the parties and deprives the appellate court of the benefit of informed thinking of the trial judge. *Terpstra v. Soiltest, Inc.*, 63 Wis. 2d 585, 593, 218 N.W.2d 129 (1974).

It is for these reasons that this court has emphasized that it will exercise its power of discretionary reversal and review only in exceptional cases. *Wells v. Dairyland Mut. Ins. Co., supra; State v. Cuyler*, 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983). This was the primary policy concern of the *Schumacher* court in setting restrictions on the court of appeals' common-law authority to exercise its discretionary power of reversal notwithstanding the waiver of the error by trial counsel.

Although this court was concerned with preservation of the waiver rule in *Schumacher,* this court also recognized the importance of thé inherent power of this court to review waived error, separate and apart from the power granted to this court and the court of appeals by

11

statute. As this court stated many years ago in *Cappon,* 165 Wis. at 491:

> But to this rule [the waiver rule] there are many exceptions . . .. No question of the power of this court is involved. Whether this court should review a question raised here for the first time depends upon the facts and circumstances disclosed by the particular record. It undoubtedly has the power, but ordinarily will not exercise it. The question is one of administration, not of power.

Likewise in *State v. Dyess,* 124 Wis. 2d 525, 536, 370 N.W.2d 222 (1985), the court explained that "this court, even prior to the broad discretionary grant of power to consider issues specifically conferred by the 1977 constitutional revision, had the option of considering issues if it appeared to the court to be in the interests of good judicial administration to do so."

Consistent with our decision in *Schumacher,* we once again attempt to achieve a balanced and workable rule of judicial administration by taking into consideration this court's broad inherent power to reach issues not preserved by the parties, the ability of the court of appeals to achieve justice in individual cases under its statutory discretionary reversal power, and this court's desire to preserve the general rule that failure to object to error at the trial court level results in waiver of that error.

The court of appeals exercised its discretion and reversed the judgment of the trial court despite the waiver in this case because it concluded that the real controversy had not been fully tried. Thus, the issue presented to this court is whether the court of appeals erred by exercising discretionary reversal power under sec. 752.35, Stats., on the grounds that the real controversy was not fully tried.

12

We conclude that the court of appeals has discretionary authority under sec. 752.35, Stats., to reverse the judgment of the circuit court in this case, despite the failure of plaintiff to preserve the objection for appeal. We affirm the decision of the court of appeals reversing the judgment of the trial court and remanding for further proceedings.

This court has on many an occasion attempted to delineate the authority of the court of appeals and of this court to exercise its discretionary power to reverse judgments where the alleged error was not objected to or otherwise preserved at trial.

The discretionary power to reverse judgments and to review waived error arises from both the common law and from statute. *State v. Penigar,* 139 Wis. 2d 569, 577, 408 N.W.2d 28 (1987). In *Schumacher* this court addressed the power of the court of appeals under the common law "integrity of the fact-finding" test under *State v. Shah,* 134 Wis. 2d 246, 254, 397 N.W.2d 492 (1986), to reverse a judgment, despite defendant's failure at trial to object to the jury instruction. We concluded that, while the court of appeals had the discretionary power of reversal stated under sec. 752.35, Stats., it did not have the common-law power to review waived error—allocated to this court by its decisional process in the "integrity of the fact-finding" line of cases, culminating in *State v. Shah.* 134 Wis. 2d at 254. We concluded that, while both the court of appeals and the supreme court have the identical discretionary power to reverse judgments based on waived error under secs. 752.35 and 751.06, respectively, only the supreme court has the power to review waived error under the common-law rule known as the "integrity of the fact-finding" exception. We held that the court of appeals had exceeded its

13

authority by relying on this common-law rule. Because the court of appeals relied on this common-law exception to the general rule that unobjected-to error is waived, we did not have the occasion in *Schumacher* to delineate the discretionary reversal power of the court of appeals granted to it pursuant to sec. 752.35. Instead, we exercised our own common-law power to review the waived error, and determined that the unobjected-to jury instruction was not improper and, in effect, affirmed the circuit court's decision.

When we review waived error, as in *Schumacher*, we are not institutionally concerned with achieving justice in the particular case. The court of appeals performs that function admirably and there is no reason to believe that this court can do better in that respect. When we review error we do so not merely to correct error or to examine alleged error; instead we do so because the alleged error in issue has some substantial significance in our institutional law-making responsibility as set forth in the statute and constitution[3] and as reflected in our rules for accepting cases on petition for review. Institutionally, we are more concerned with developing and clarifying the law. This court has relied on the "integrity of the fact-finding" test on numerous occasions in order to review an unobjected-to error and reach the conclusion that there was no error. Under this common-law power we may in our discretion review an error that was technically waived and affirm. *See State v. Baldwin,* 101 Wis. 2d 441, 445–46, 304 N.W.2d 742 (1981); *Manson v. State,* 101 Wis. 2d 413, 417 n.2, 304 N.W.2d 729 (1981); *State v. Cheers,* 102 Wis. 2d 367, 306 N.W.2d 676 (1981); *State v. Shah,* 134 Wis. 2d 246, 397 N.W.2d 492 (1986).

---

[3]Article VII, sec. 3, Wisconsin Constitution.

14

Because of the different roles of the supreme court and the court of appeals, we concluded in *Schumacher* that only this court has the power to review waived error under the common-law rule known as the "integrity of the fact-finding process" test.

We emphasized, however, that the discretionary power of reversal, granted to both the court of appeals and this court by statute, as opposed to the discretionary power of review granted to this court by the common law, is compatible with doing justice in an individual case, which is primarily the duty of the court of appeals. 144 Wis. 2d at 408. We recognized that "under our two-tiered appellate system, the court of appeals is destined to be the court of last resort for most cases." *Id.* Accordingly, we concluded that, "it would be inappropriate for that court to have no discretion with respect to claimed error in instruction." *Id.*[4] It should have the substantial discretion granted under sec. 752.35, Stats., as that statute is liberally construed.

---

[4]We emphasize that the language used regarding the court of appeals' role as an error-correcting court should not be read outside the narrow context of *Schumacher,* which distinguished between the court of appeals' power to reverse and this court's broader law-developing power to review waived error. The entire organizational scheme of our court system, as designated constitutionally in 1977–78, provides that the court of appeals has law-making power that transcends merely doing justice in the individual case, a law-making power that is subject to review by this court on the petition of a party, or subsequently if the supreme court in an appropriate case determines to follow or overrule a court of appeals' published decision that had not been brought to it on review. Since 1978, a body of law, which lawyers and trial courts are obliged to follow and which this court treats as precedent, stems from published decisions and opinions of the court of appeals.

We now turn to the court of appeals' power to reverse judgments, despite waiver of any error, under sec. 752.35, Stats. The court of appeals in *Vollmer* concluded that neither the *Wyss* court nor the *Schumacher* court intended that secs. 751.06 and 752.35, limit situations in which the real controversy has not been fully tried to the two evidentiary circumstances described in *Wyss*. *Vollmer v. Luety,* 150 Wis. 2d at 897. We agree.

As explained above and as recognized by the court of appeals in *Vollmer, Schumacher* set forth the limitations on the court of appeals' discretionary review power granted by one common-law exception to the waiver rule, but did not address the court of appeals' discretionary reversal power granted to it by statute.

In *State v. Wyss,* in the context of the facts there at issue, this court discussed the court of appeals' power to reverse a judgment under sec. 752.35, Stats. The *Wyss* court explained that there were two grounds for reversing a judgment and ordering a new trial under secs. 752.35 and 751.06. The court stated that a new trial may be ordered on either of two grounds: (1) whenever the real controversy has not been fully tried or (2) whenever it is probable that justice has for any reason miscarried. 124 Wis. 2d at 735. We stated that, under the first category, when the real controversy has not been fully tried, an appellate court may exercise its power of discretionary reversal without finding the probability of a different result on retrial. Under the second category, however, an appellate court must first find a substantial probability of a different result on retrial before exercising its discretionary reversal power.

In *Wyss,* we concluded that the court of appeals erred as a matter of law because it exercised its discretionary reversal power under the second category of sec. 752.35, Stats.—the miscarriage-of-justice test—without

16

first finding that there was a substantial probability of a different result on retrial. Accordingly, the *Wyss* court had no occasion to consider the court of appeals' discretionary-reversal power under the first category—the real controversy not fully tried—of sec. 752.35, Stats. We therefore agree with the court of appeals that "[f]or that reason, the circumstances under which either the supreme court or the court of appeals may reverse on making such a determination was not before the *Wyss* court." *Vollmer v. Luety,* 150 Wis. 2d at 898 (Ct. App.).

It is the application of that first category under sec. 752.35, Stats.—whether the real controversy has been fully tried—to a jury verdict question which is before this court today.

We also agree with the court of appeals that, because of the factual posture of the case, the *Wyss* court confined its discussion of circumstances in which the real controversy had not been fully tried to the two evidentiary situations stated above. Furthermore, consistent with the court of appeals' opinion, we conclude that, because secs. 751.06 and 752.35, Stats., are identical, the legislature did not intend for the court of appeals' power to reverse under sec. 752.35 to be less than that of the supreme court under sec. 751.06. As this court repeatedly explained in *Schumacher,* it is the common law "integrity of the fact-finding" exception—which grants the supreme court the power to review waived error—that is unavailable to the court of appeals.

Both the supreme court and the court of appeals have the discretionary power to reverse judgments where unobjected-to error results in either the real controversy not having been fully tried or for any reason justice is miscarried under secs. 751.06 and 752.35, Stats. *See supra* at n.2. The language used in these two statutes is

for our purposes identical. In *State v. Schumacher,* this court traced the legislative history of secs. 751.06 and 752.35 and made several statements which reflect this court's view that, with respect to the discretionary power to reverse under secs. 751.06 and 752.35 the powers of the supreme court and the court of appeals are coterminous.

Prior to January 1, 1976, the effective date of sec. 805.13(3), Stats., the common law of this state was that a failure to object to instructions amounted to a waiver of any right to raise the issue of erroneous instruction on appeal. [Citation omitted.] However, there were several judicially created exceptions to this common law waiver rule, which allowed for discretionary review by this court. In addition, after 1913, there was a statutory exception which allowed for discretionary reversal, a statutory exception which exists today.

Turning first to the statutory exception allowing discretionary reversal, sec. 2405m, Stats. 1913, allowed a discretionary reversal when it either appeared from the record that the real issue in controversy had not been fully tried, or when it was probable that justice had, for any reason miscarried. [Footnote omitted.] This statute eventually became the current section 751.06, Stats. [Footnote omitted.] *When the court of appeals was instituted in 1978, a substantially similar power of discretionary reversal was extended to that court under sec. 752.35, Stats.* [Footnote omitted and emphasis added.]

Over the course of this statute's life, this court has often been called upon to interpret the scope of the discretionary-reversal power granted *to both this court and to the court of appeals.* [Emphasis added.]

144 Wis. 2d at 398–400.

Based on the legislative history and judicial interpretations of secs. 751.06 and 752.35, Stats., it is appropriate to conclude that the power of reversal under these statutes is identical. Accordingly, cases of this court which interpret the supreme court's power to reverse judgments, notwithstanding waived error, under sec. 751.06 are equally applicable as interpretations of the court of appeals' power to reverse judgments under sec. 752.35.

In reviewing the cases in which we have interpreted the scope of our discretionary power to reverse judgments under sec. 751.06, Stats., we conclude that the court of appeals, like this court, has broad power of discretionary reversal. This broad statutory authority provides the court of appeals with power to achieve justice in its discretion in the individual case. The first category of cases arises when the real controversy has not been fully tried. Under this first category, it is unnecessary for an appellate court to first conclude that the outcome would be different on retrial. The second class of cases is where for any reason the court concludes that there has been a miscarriage of justice. Under this second category of the statutes, an appellate court must first make a finding of substantial probability of a different result on retrial.

This court has relied on this first category of the statute to reverse judgments in many situations, not limited to the two evidentiary situations mentioned in *Wyss.* We have concluded that the real controversy was not fully tried, and reversed judgments where important evidence was erroneously excluded, thereby depriving the jury of the opportunity to hear important testimony that bore on an important issue in the case. *Wyss,* 124 Wis. 2d at 735, citing *State v. Cuyler,* 110 Wis. 2d 133, 142–43, 327 N.W.2d 662 (1983); *Garcia v. State,* 73 Wis.

2d 651, 245 N.W.2d 654 (1976). Likewise, this court has reversed judgments, after concluding that the real controversy was not fully tried, because the jury had before it evidence which should have been excluded by the trial judge. *Logan v. State,* 43 Wis. 2d 128, 137, 168 N.W.2d 171 (1969); *State v. Penigar,* 139 Wis. 2d 569, 578, 408 N.W.2d 28 (1987).

In addition to situations involving the erroneous admission or exclusion of evidence, this court has reversed judgments where, under the first test of sec. 751.06, Stats., an error in the jury instructions or verdict questions occurred, but was waived. In *Air Wisconsin,* this court concluded that the issue of liability was not "fully or properly tried," because an erroneous instruction was given on a significant issue. *Air Wisconsin,* 98 Wis. 2d at 318. The court could not conclude that the outcome would be different on retrial. *See also In the Interest of C.E.W.,* 124 Wis. 2d 47, 368 N.W.2d 47 (1985). Likewise, in *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 292 N.W.2d 630 (1980), and *Gyldenvand v. Schroeder,* 90 Wis. 2d 690, 280 N.W.2d 235 (1979), this court reversed the judgments where the waived error was in the verdict question. In *Clark,* this court relied on sec. 751.06 to reverse the judgment without indicating upon which test or which line of cases it was relying.

In a number of other cases, this court has reversed a judgment notwithstanding failure to object on the grounds that the real controversy was not fully tried in situations where, either due to error of the trial judge or counsel, a significant legal issue was not properly tried to the court. *See, Fletcher v. Eagle River Memorial Hospital, Inc.,* 156 Wis. 2d 165, 456 N.W.2d 788 (1990); *Hernan Plumbing v. Anchor Savings & Loan,* 104 Wis. 2d 532, 537-38, 312 N.W.2d 745 (1981); *First National Bank & Trust Co. v. Notte,* 97 Wis. 2d 207, 225-26, 293

N.W.2d 530 (1980); *Merco Distributing Corp. v. O & R Engines, Inc.,* 71 Wis. 2d 792, 797–98, 239 N.W.2d 97 (1976). This court has reversed judgments under sec. 751.06, Stats., where the record was deemed incomplete or insufficient. *Bostonian Homes, Inc. v. Struck,* 44 Wis. 2d 553, 559–60, 171 N.W.2d 320 (1969); *Walter v. Four Wheel Drive Auto Co.,* 213 Wis. 559, 572, 252 N.W. 346 (1934). This court has reversed a judgment where conduct during the course of trial prevented the jury from fairly considering a crucial issue before the court. *Lorenz v. Wolff,* 45 Wis. 2d 407, 173 N.W.2d 129 (1970). This court has exercised its power under the discretionary reversal statute and ordered a new trial where the evidence was confusing to the jury. *Prideaux v. Milwaukee Automobile Ins. Co.,* 246 Wis. 390, 394–95, 17 N.W.2d 350 (1945). Finally, this court has exercised its discretionary reversal power on the grounds that the real controversy was not fully tried where the "record of the whole case shows such an abundance of misunderstanding, cross-purposes, and frustration that dismissal would leave us with a strong belief that the issues had not been fully tried nor justice done." *Erickson v. Westfield Milling & Electric Light Co.,* 263 Wis. 580, 589, 58 N.W.2d 437 (1953). While this is not an exclusive list of every situation where this court has exercised its discretionary reversal power under sec. 751.06 or its predecessors, it illustrates that the court of appeals has the same broad discretion under sec. 752.35, Stats., as does this court under sec. 751.06. This broad discretion enables it to achieve justice in individual cases, which is consistent with its role as an error-correcting court.[5]

[5]There are of course certain issues which are unwaivable. For example, the defense of incompetency to stand trial cannot be waived. *State v. Johnson,* 133 Wis. 2d 207, 218 n.1, 395 N.W.2d 176 (1986). In addition, courts always have the power to review

21

Because this court has relied on the first test of sec. 751.06, Stats., to reverse a judgment notwithstanding counsel's failure to object to an erroneous verdict question, the court of appeals is authorized to do so under its equivalent discretionary reversal power under sec. 752.35, Stats. Accordingly, it was proper for the court of appeals to reverse the judgment in this case because it concluded that the erroneous special verdict question led the jurors to focus their attention on the defendant's negligence in maintaining the premises, when the crux of plaintiff's case was that the defendant was negligent in his operation of the power mower. The court of appeals correctly concluded that the real controversy had not been fully tried.

In a case where an instruction obfuscates the real issue or arguably caused the real issue not to be tried, reversal would be available in the discretion of the court of appeals under sec. 752.35, Stats.

The court of appeals decision, which reversed the judgment of the trial court, is affirmed and the cause is remanded for further proceedings in accordance with the mandate of the court of appeals.

*By the Court.*—Decision affirmed.

---

issues which arise from ineffective assistance of counsel. *See Schumacher,* 144 Wis. 2d 408 n.14. Likewise, courts have the power to consider sua sponte issues not raised or challenged by the parties. Martineau, *Modern Appellate Practice,* sec. 3.9, p. 39. Courts must always be able to review error regardless of waiver where "the error is so plain or fundamental as to affect substantial rights of the defendant." *See Claybrooks v. State,* 50 Wis. 2d 79, 85, 183 N.W.2d 139 (1971); *In Interest of C.E.W.,* 124 Wis. 2d 47, 56 n.6, 368 N.W.2d 47 (1985).

SHIRLEY S. ABRAHAMSON, J. (concurring). I join the majority opinion and write separately to summarize what I view as the key principles regarding the court of appeals' powers of discretionary review and reversal as set forth by the majority opinion:[1]

1. Sections 751.06 and 752.35, the statutes governing discretionary reversal, are identical except that the former section applies to the supreme court and the latter section applies to the court of appeals. Majority opinion at p. 17. The statutes give both appellate courts the same "broad discretion," majority opinion at p. 21, to review all unobjected-to, alleged errors and reverse judgments.

2. I think the majority opinion has in effect overruled the discussion of statutory discretionary reversal appearing in *State v. Wyss,* 124 Wis. 2d 681, 732–43, 370 N.W.2d 745 (1985), and *State v. Schumacher,* 144 Wis. 2d 388, 424 N.W.2d 672 (1988), which is based on and follows from *Wyss.* The majority opinion relying on pre-*Wyss* cases concludes that both the supreme court and the court of appeals have broad discretion to reverse a judgment under secs. 751.06 and 752.35 if there is an unobjected-to error:

a. When the real controversy has not been fully tried (which, as a result of the majority opinion, is not limited to erroneously included or excluded evidence). Majority opinion at p. 19.

b. When the issue was not "fully or properly tried," majority opinion at p. 20, quoting *Air Wisconsin, Inc.. v. North Central Airlines, Inc.,* 98 Wis. 2d 301, 318, 296 N.W.2d 749 (1980) (because of an unobjected-to

---

[1]See *State v. Wyss,* 124 Wis. 2d 681, 744–58, 370 N.W.2d 745 (1985) (Abrahamson, J., dissenting); *State v. Schumacher,* 144 Wis. 2d 388, 416–20, 424 N.W.2d 672 (1988) (Abrahamson, J., concurring).

erroneous instruction a party was prevented from "having a full, fair trial of the issues of the case." 98 Wis. 2d at 318). See also *Erickson v. Westfield Milling & Electric Light Co.,* 263 Wis. 580, 589, 58 N.W.2d 437 (1953) ("the issues had not been fully tried nor justice done . . . the interest of justice [requires reversal]"), majority opinion at p. 21, *Priedeaux v. Milwaukee Automobile Ins. Co.,* 246 Wis. 390, 394-95, 17 N.W.2d 350 (1945) ("justice has miscarried by reason of failure of the jury to bear all the evidence in mind and properly consider it"), majority opinion at pp. 20-21.

I do not know what, if anything, distinguishes these cases, which are "not an exclusive list of every situation" allowing the exercise of statutory discretionary reversal (majority opinion at p. 21), from the common law "integrity of the fact-finding" test "for review" discussed in *Schumacher,* 144 Wis. 2d at 403-409, 416, and limited to this court, majority opinion at pp. 13, 15, 17. See *Air Wisconsin,* 98 Wis. 2d at 318; *Schumacher,* 144 Wis. 2d at 419 (Abrahamson, J., concurring).[2]

---

[2]One student author writing on the *Wyss* case (before *Schumacher* was decided) concluded that a fairness test was not needed under secs. 751.06 and 752.35, because both the court of appeals and this court have the power, apart from sec. 752.35 and sec. 751.06, respectively, to review an alleged error that goes to the integrity of the fact-finding process, that is, "an appellate court which determines a trial to be fundamentally unfair recognizes a constitutional denial of due process." See Note, *State v. Wyss: A New Appellate Standard for Granting New Trials in the Interest of Justice,* 1987 Wis. L. Rev. 171, 184-85.

The majority opinion denies the power to the court of appeals to review under the common law standard, as did *Schumacher,* majority opinion at p. 17.

More recently a student author has criticized the *Schumacher* case for creating dual standards whereby the court of appeals is confined to a purely error-correcting function and may

24

If there is a difference, this court should receive and grant more by-passes, petitions for review, and certifications. *Schumacher,* 144 Wis. 2d at 420 (Abrahamson, J., concurring).

c. When it is probable that justice has for any reason miscarried, that is, the appellate court can conclude that a new trial would probably produce a different result.

3. The cases arising before *Wyss* (which the majority opinion resurrects, including *Air Wisconsin* upon which the majority opinion and the court of appeals decision in *Vollmer* rely) illustrate the variety of circumstances under which this court has exercised its broad statutory discretion to review and reverse in the interest of justice. See also *State v. Wyss, supra* 124 Wis. 2d at 746–58 (Abrahamson, J., dissenting).

In contrast, *Wyss* abandoned this broad view of the discretionary reversal statute and emphasized a mechanistic "two-part" test, reversing the court of appeals decision in *Wyss* because it discussed the "fair trial" test (2b above) using the words "miscarriage of justice" (2c above) without concluding that a new trial might produce a different result.

*Schumacher* further restricted the discretionary reversal power granted by statute to both the court of appeals and the supreme court, noting that such powers

rely only on the "narrow" discretionary reversal under sec. 752.35, while the supreme court has the broader power under the common law standard to review unobjected-to errors. The student author advocated that this court adopt a uniform broad standard of statutory discretionary reversal for both courts and recognize that the court of appeals may use the common law standard. See Note, *State v. Schumacher: Dual Standards of Review for Waived Claims of Error in the Wisconsin Supreme Court and Court of Appeals,* 1989 Wis. L. Rev. 773, 775, 802, 808–809.

are "relatively narrow" under the *Wyss* test, *Schumacher, supra* 144 Wis. 2d at 404. *See also,* 144 Wis. 2d at 416–20 (Abrahamson, J., concurring).

Although the majority opinion sub silentio abandons this mechanistic "two-part" test, see majority opinion at pp. 19–21, a possible continuing effect of *State v. Wyss* on the issue of statutory discretionary reversal, is, as far as I can determine, in the terminology created by that decision.

As a result of the majority opinion, lawyers and the court of appeals can now fit numerous unobjected-to errors affecting the fairness of the trial into the "real controversy not fully tried" category to reach the merits of an unobjected-to error. In order to steer clear of any linguistic problems created by this court's decisions in *Wyss* and *Schumacher* and in the majority opinion, the court of appeals and lawyers discussing statutory discretionary reversal should, I believe, employ the talismanic "real controversy not fully tried" formulation. They should also avoid talking about "miscarriage of justice" unless the court can make a determination that a new trial might have a different result. Apart from this caution regarding terminology, I do not think that much remains of the substance of *Wyss* or *Schumacher*.

WILLIAM A. BABLITCH, J. (concurring). I join the majority opinion. I write separately only to answer the concurring opinion.

The author of the concurring opinion continues to insist, as she did in *State v. Wyss,* 124 Wis. 2d 681, 370 N.W.2d 745 (1985), that the court of appeals may rely on any of three grounds for reversing a judgment under sec. 752.35, Stats.

This case affirms *Wyss* and *State v. Schumacher,* 144 Wis. 2d 388, 424 N.W.2d 672 (1988). Both cases, as

26

well as this majority opinion, state unequivocally that there are only two grounds for the court of appeals to reverse a judgment under sec. 752.35, Stats.: 1) when the real controversy has not been fully tried; or, 2) when it is probable that justice has for any reason miscarried and the appellate court can conclude that a new trial would probably produce a different result.

The concurrence, if not answered, could well produce confusion among the bar and the lower courts. The author of the concurring opinion urged in *Wyss* that a third ground of reversal be adopted, the common law, namely the integrity of the fact-finding process test. Her position was rejected. *See* Note, *State v. Wyss: A New Appellate Standard for Granting New Trials in the Interest of Justice,* 1987 Wis. L. Rev. 171. We continue to reject it.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN, JUSTICES ROLAND B. DAY, WILLIAM G. CALLOW, DONALD W. STEINMETZ AND LOUIS J. CECI join in this concurrence.